

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cause No. CR 05-23-BU-DWM |
| | ) | CV 09-66-BU-DWM |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING § 2255 MOTION |
| | ) | |
| JOHN FREDERICK JAEGER, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

---

This case comes before the Court on Defendant/Movant John Jaeger's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Jaeger filed his motion pro se. He has since been appointed new counsel, Daniel V. Donovan. Donovan timely filed a Supplement to the § 2255 motion. The United States has filed an Answer, and Jaeger has filed a Reply. The pleadings are closed.

Typically, at this point a schedule would be set for discovery and possibly oral argument or an evidentiary hearing. In this case, there is no need for that. The

ORDER GRANTING § 2255 MOTION / PAGE 1

judgment entered on November 9, 2006, is not defensible. Taking all the allegations in the parties' pleadings as true, Jaeger is entitled to judgment as a matter of law. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001); 28 U.S.C. § 2255(b); Rule 12, Rules Governing § 2255 Proceedings; 2 James William Moore, Moore's Federal Practice § 12.38 & n.3 (3d ed. 2003) ("[T]he court may act sua sponte.").

## I. Background

Jaeger was indicted with four co-defendants on one count of conspiracy to distribute more than 50 grams of a substance containing methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1), and one count of distribution of more than 50 grams of methamphetamine, a violation of 21 U.S.C. § 841(a)(1) (Count 2). Indictment (doc. 1) at 2.

A Superseding Indictment added one count of distributing a detectable amount of methamphetamine to a minor, a violation of 21 U.S.C. §§ 859 and 841(a) (Count 3), and one count of money laundering, a violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 4). Jaeger was also indicted in a separate case with being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). Superseding Indictment (doc. 59) at 2-3; Indictment at 1-2, United States v. Jaeger, No. CR 06-03-BU-DWM (D. Mont. Apr. 6, 2006). The maximum penalty Jaeger faced on any single charge

was forty years. 21 U.S.C. §§ 841(b)(1)(B), (C), 859(a).

On Jaeger's motion, the felon-in-possession case was consolidated for trial with the drug case. Order (doc. 83).

All four of Jaeger's co-defendants pled guilty before trial under agreements that contemplated sentence reduction in exchange for testimony. Four other people involved in the same conspiracy – Tracy Caldwell, Arthur Halse, Larry Phillips, and Tina Gibson – also pled guilty under similar agreements. The evidence against Jaeger was strong. He was convicted at trial on all counts except Count 4, money laundering.

At sentencing, Jaeger was held responsible for 12 pounds, or 5.4 kilograms, of methamphetamine. The base offense level was 37 – that is, the level corresponding to the drug quantity, 36, U.S.S.G. § 2D1.1(c)(2), plus one level for participation in a conspiracy, U.S.S.G. § 2D1.2(a)(2). Presentence Report ¶ 26. Jaeger received a two-point upward adjustment for possession of a weapon in connection with the offense. U.S.S.G. § 2D1.1(b)(1); Presentence Report ¶ 27. Based on a total offense level of 39 and a criminal history category of III, Jaeger's advisory guideline range was 324 to 405 months. He was sentenced to serve 324 months in prison and six years on supervised release. Minutes (doc. 143); Judgment (doc. 144) at 2-3.

## II. What Jaeger Must Prove to Obtain Relief

Jaeger claims that "trial counsel did not provide him with effective assistance of counsel as to his decision to plead guilty or go to trial." Supp. (doc. 175) at 4. The decision whether to plead guilty or go to trial is the defendant's. In making it, he is entitled to the effective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Powell v. Alabama, 287 U.S. 45, 57 (1932) (stating that the period from "arraignment until the beginning of . . . trial" is "perhaps the most critical period of the proceedings."); United States v. Blaylock, 20 F.3d 1458, 1468 (9th Cir. 1994).

Because the decision is the defendant's, counsel's obligation to assist is not fulfilled merely by telling the defendant whether he should plead guilty or go to trial. "[A]n accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings, and laws involved and then to offer his informed opinion as to what plea should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721 (1948). Thus, the subject matter of the motion is counsel's advice to Jaeger as to the elements the prosecution must prove, how the evidence matched up (or not) to the elements, and the range of penalties he faced if convicted, at trial or by guilty plea, on one or more charges.

The United States' Answer and exhibits – including counsel's affidavit – do not speak to that subject. As a result, they do not contradict Jaeger's claim or support

ORDER GRANTING § 2255 MOTION / PAGE 4

further proceedings. Jaeger does not claim that, but for counsel's errors, "he would have been acquitted." Answer (doc. 182) at 4; id. at 12. Nor is it particularly relevant that counsel's recommendation turned out to be a better idea than the choice the defendant made. E.g., id. at 5 (quoting counsel's statement that "this new evidence does not look good"); id. at 6 (quoting counsel's affidavit stating that Jaeger was "adamant that he had done nothing wrong.").

Instead, the focus is on the content of counsel's advice and on what a reasonable person in Jaeger's position would have chosen in response to competent advice. Jaeger must show that counsel's advice fell outside the broad range of competence demanded of criminal defense attorneys and that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 693 (1984); McMann v. Richardson, 397 U.S. 759, 771 (1970). Because Jaeger's motion is directed at his choice to go to trial, he must show a reasonable probability that, but for counsel's errors, he would have pleaded guilty. Nunes v. Mueller, 350 F.3d 1045, 1052-53 (9th Cir. 2003); Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. It is *less* than a preponderance of the evidence. Strickland, 466 U.S. at 693-94.

Contrary to the reasoning of the Answer and counsel's affidavit, the Strickland

ORDER GRANTING § 2255 MOTION / PAGE 5

test is objective. It does not depend on "the idiosyncracies of the particular decisionmaker." Hill, 474 U.S. at 60 (quoting Strickland, 466 U.S. at 695). Where a defendant claims his counsel failed to investigate the case adequately, "the determination whether the error 'prejudiced' the defendant . . . will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," id. at 59 – not whether the defendant necessarily would have taken counsel's advice. Where the alleged error is failure to advise of an affirmative defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. Likewise, here, the prejudice inquiry is addressed by asking whether a reasonable person in Jaeger's position would have pled guilty if competently advised about his case.

Here, prejudice is objectively clear on the face of the record. Counsel's advice would have gravely misled a reasonable person in Jaeger's position about the nature of the charges he faced, about the strength of the evidence against him, and about the penalties he faced.[1] To whatever extent Jaeger is required to allege that he personally would have pleaded guilty instead of going to trial, Hill, 474 U.S. at 59; Turner, 281

_____

[1] The presumption of prejudice outlined in United States v. Cronic, 466 U.S. 648, 659 (1984) (presuming prejudice where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"), will not be applied in this case. Nonetheless, the circumstances here are so egregious and pervasive that Cronic has been seriously considered.

ORDER GRANTING § 2255 MOTION / PAGE 6

F.3d at 879, that requirement is satisfied by his statement that he "does not seek a new trial" and that if he fails to enter a guilty plea, "his 324 month prison sentence would not be changed." Reply (doc. 183) at 1, 2 n.1.[2]

### III. What the Record Shows

### A. Ineffective Assistance as to Total Sentencing Exposure

As supplemented by the exhibits attached to Jaeger's original motion and the United States' Answer, the record shows that Jaeger received advice "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" about pleading guilty versus going to trials. Turner, 281 F.3d at 880 (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).

An order dated May 9, 2006, set trial for June 19, 2006. On May 10, 2006, counsel wrote the following letter to Jaeger:

---

[2] At the time his presentence report was prepared, Jaeger told the probation officer, "had the charges against me been accurate, I would of surely pled out instead of taking the case to trial." Presentence Addendum at 6 (quoting letter of Oct. 3, 2006). The "accuracy" of the charges, of course, depends on what counsel told Jaeger they meant.

In his original, pro se § 2255 motion, Jaeger states, "After my attorney, (by his own calculations) told me I was going to do life, (see exhibit A), I told him I wanted to plead to distribution of methamphetamine" because "this is the one [charge] I knew I was guilty of." Mot. § 2255 (doc. 170) at 4 ¶ 12 "Ground One." The latter statement is contradicted by counsel's averment that Jaeger "was not interested in *any* plea because he had not committed *any* crime." Aff. (doc. 182-3) at 2 ¶ 4 (emphases added). Because this matter is contested, it has not been considered here.

John Jaeger
Via hand delivery

Re:   Potential Federal Sentence

Dear Mr. Jaeger,

If you proceed to trial and are convicted of all counts, your sentence
would fall in the following guidelines for each count, all drug counts
would be grouped together:

**Counts I-III:**
Base level        (Count I- 26, Count II - 26, Count III - 14)
> Total base offense level of 66 (per Drug Quantity
> Table)
> Role in offense
>> *Increase 4 (possible increase if an organizer
>> or leader)
>> If not 4 than will be an increase of 2
> Possible Base Level: 68-70  (depending on role in
> the offense)

Criminal history    Category I[3]
> **Any base level past 43 is Life**

**Count IV**
> This category cannot be determined because the
> government has not disclosed a specific amount of money
> alleged to have been laundered, which determines the base

---

[3] As it happened, counsel was wrong about Jaeger's criminal history category.
He had five criminal history points, placing him in category III, Presentence Report
¶ 37, and counsel knew that Jaeger had a felony conviction; he was charged as a felon
in possession.  But a criminal history category of I is not impossible, even for a
convicted felon.  The age of the conviction, whether the defendant served any prison
time, and what the defendant told counsel may all be significant.  By contrast,
counsel's arrival at a base offense level of 68-70 is utterly indefensible.

level.

Obviously, some counts would have to be dismissed, otherwise you have no incentive not to take this to trial.

Mot. § 2255 Ex. A (doc. 170-1) at 1. Counsel concedes the authenticity of this letter. Aff. (doc. 182-3) at 2 ¶ 6.

This advice is patently incompetent. Not only did it aggregate counts in a manner totally foreign to federal sentencing law, it also minimized the potential drug quantity at level 26, "at least 50 grams but less than 200 grams of methamphetamine," U.S.S.G. § 2D1.1(c)(7). There is no evidence that Jaeger was told the drug quantity at sentencing could be significantly higher than the 50 grams with which he was charged or that the amount over 50 grams did not have to proven beyond a reasonable doubt. Counsel's advice also suggested the federal government believed Jaeger's conduct posed an extraordinarily serious criminal threat that was, literally, "off the charts." Jaeger must have known this suggestion was absurd, but counsel's advice told him the absurdity inhered in the charges. The integrity of the proceeding – not just the specific advice Jaeger received, but the good faith of Jaeger's prosecution itself – was undermined by this preposterous advice.

Counsel was not functioning as the counsel guaranteed by the Sixth Amendment when he advised Jaeger of the range of penalties he faced. Any

relationship between counsel's advice and reality was merely accidental. It could not counteract or dilute the prejudice that Jaeger suffered as a result of not having a realistic assessment of his exposure at sentencing.

### B. Ineffective Assistance as to Open Plea

Counsel's letter does not say anything about the two-level reduction in the offense level that Jaeger would receive if he pled guilty to all charges, U.S.S.G. § 3E1.1(a), or the conditions under which he likely would receive an additional one-level reduction on the prosecution's motion, id. § 3E1.1(b). Given a level of 68, of course, a three-level reduction would hardly be worth mentioning. But even if, under counsel's logic, a guilty plea resulted in a three-level downward adjustment for acceptance of responsibility on *each* of Counts 1 through 3, Jaeger's base offense level on an open plea would still be a guidelines-busting level 59 – "**Life.**" An undefined but apparently consecutive sentence under Count 4 was yet to be assessed, to say nothing of the charge of felon in possession of a weapon in Jaeger, No. CR 06-03-BU-DWM.

In reality, had Jaeger entered an open plea to all counts, his advisory sentencing guideline range would have been 292-365 months, U.S.S.G. § 2S1.1(a)(1), (b)(2)(B), Presentence Report ¶¶ 25-32 – a lower range than he faced even after he was acquitted on Count 4 at trial. Yet the last sentence of counsel's letter expressly told

ORDER GRANTING § 2255 MOTION / PAGE 10

Jaeger he could not benefit from an open plea.

### C. Ineffective Assistance as to Effect of Cooperation

The United States argues, and counsel avers, that Jaeger "did not care what my letter indicated as possible sentences," Aff. at 2 ¶ 7, and "refused to cooperate in any way . . . even when advised it could lower potential sentences and/or charges," id. ¶ 5. Clearly, however, this was not a case where the defendant was unequivocally determined throughout the case to ignore counsel's advice altogether, refuse to consider a guilty plea, and proceed to trial. E-mail exchanges between counsel and AUSA Van de Wetering, initiated on March 3, 2006, then extending from May 10 to June 2, 2006, show that counsel believed a good offer could make a difference.

On March 3, 2006, counsel asked AUSA Van de Wetering for some idea of what he might offer in exchange for a guilty plea. He also sought guidance on the amount of drugs attributable to Jaeger. Answer Ex. A (doc. 182-1) at 1. In response, Van de Wetering produced some witness interviews for counsel's review. Id.; Answer Ex. B (doc. 182-2) at 1-2. Between March 3 and May 10, 2006 – the day counsel wrote his letter to Jaeger – the two co-defendants who testified against Jaeger at trial pled guilty, as did his wife.

On May 10, 2006, counsel started an extended e-mail exchange with Van de Wetering. He said, "Obviously the guidelines put [Jaeger] way into a life sentence

ORDER GRANTING § 2255 MOTION / PAGE 11

on just the first two counts.  What can we do on this case.  Not much of an incentive

to take an agreement that guarantees life."  Answer Ex. A at 3-4.  Van de Wetering

responded, "He can talk," and offered to file a substantial assistance motion if Jaeger

provided something useful.  Id. at 3.  Counsel replied, "But that is only a slight

reduction right?  I think even with a substantial assistance reduction he is still looking

at life."  Id.  That assessment was flat wrong. U.S.S.G. § 5K1.1 ("Upon motion of the

government stating that the defendant has provided substantial assistance . . . the

court may depart from the guidelines."); 18 U.S.C. § 3553(e) ("Upon motion of the

Government, the court shall have the authority to impose a sentence below a level

established by statute as a minimum sentence.").

In response, Van de Wetering explained that, where a substantial assistance

motion is filed, "[i]t has not been unusual in our courts over the years for defendants

to get their sentences cut in half or so (though that is typically more than we

recommend)."  Answer Ex. A at 3.  Nonetheless, counsel persisted in the belief he

expressed in his letter to Jaeger – that "some counts would have to be dismissed,

otherwise [Jaeger has] no incentive not to take this to trial."  Mot. § 2255 Ex. A at 1.

He said, "John is not real interested in cooperating at this point, so I am hoping you

can offer me something - charge and amount wise *if he cooperates*."  Answer Ex. A

at 3 (emphasis added).  Under the reasoning of counsel's letter, dismissal of charges

ORDER GRANTING § 2255 MOTION / PAGE 12

was essential.  In reality, only dismissal of Count 4 could have affected Jaeger's

guideline calculation, U.S.S.G. § 2S1.1(a)(1), (b)(2)(B), and that by only two levels,

whereas a guilty plea would likely garner a three-level reduction, U.S.S.G. § 3E1.1,

and a substantial assistance motion could have yielded significantly more.

Between May 11 and May 23, there was a two-week break in the conversation.

Then counsel reopened the negotiations:

> We were talking about limiting the amount of meth alleged if John takes
> a plea.  I would like to know what to bring to him.  How about 1 count
> of conspiracy to distribute with the limit of 1 pound of meth,[4] which I
> believe is what Neisha talked about in her interview.

Answer Ex. A at 5 (referring to co-defendant Neesha Hoffman).

At that point, Van de Wetering explained that he could not "agree to any

amount of methamphetamine that is inaccurate.  That is, I cannot just pick an amount

and say, well that is plenty.  Any amount I agree to recommend must accurately

reflect the facts as we know them."  Id.  Van de Wetering requested some time to

confer with the case agent and his supervisors.  On June 1, 2006, he e-mailed counsel:

> All the okey-dokeys are in place.  I am preparing a plea agreement
> recommending level 32, 500 grams to 1.5 kilograms, on a plea to
> conspiracy [Count 1] and distribution to a minor [Count 3].  We dismiss
> the felon in possession.  Plea agreement contemplates cooperation.

---

[4] One pound is 453 grams, or a base offense level of 30.  U.S.S.G. §
2D1.1(c)(5).

ORDER GRANTING § 2255 MOTION / PAGE 13

Answer Ex. A at 6. If the Court followed the parties' recommendation, this offer would have resulted in a total offense level of 31 (32 + 2 - 3) and an advisory guideline range of 135-168 months, provided Jaeger proffered what he knew about his crimes. Presentence Report ¶¶ 26-34. That is half the sentence Jaeger actually received. And he could have received even more time off if the information he provided was valuable.

If counsel had, by the time he relayed this offer to Jaeger, corrected his and Jaeger's understanding of the guidelines, the § 2255 motion would probably be denied. But counsel's affidavit says only that Jaeger refused to cooperate "even when advised it could lower potential sentences and/or charges" and that he was not interested in pleading guilty. Aff. at 2 ¶¶ 4-5. Counsel does not say he corrected his May 10 advice to Jaeger at any point before or even during trial. He does not say that he explained what the prosecutor's recommendation for level 32 would mean in terms of the advisory guideline range. Meanwhile, Jaeger had a letter advising him that Count 2 – a charge that Jaeger later claimed he "knew [he] was guilty of" – would place him at level 26, which would mean a prison sentence about half the prosecution's offer.

Counsel failed to provide the assistance required by the Sixth Amendment. His advice so distorted reality that Jaeger was in no position to recognize a good offer

ORDER GRANTING § 2255 MOTION / PAGE 14

when he got one.  Whatever Jaeger's reasons for rejecting the prosecution's plea offer, it is impossible to have confidence that he would have made the same decision if he had been correctly advised.  He was entitled to weigh his priorities against correct legal advice about the penalties he was facing and about the effect of cooperation or a proposed plea agreement on those penalties.  The record shows that Jaeger received advice "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" about the plea offer.  Turner, 281 F.3d at 880.

### D. Jaeger's Decision to Go to Trial

The United States asserts that counsel's sentencing advice is beside the point because Jaeger was "adamant that he had done nothing wrong and wanted to go to trial."  Answer at 3-4 (quoting Aff. at 2 ¶ 7).  Counsel also avers:

> 8. Based upon the representations of events and facts by Mr. Jaeger to myself, we created a trial strategy that was discussed with Mr. Jaeger as it related to each offense, including conspiracy.
>
> 9. Mr. Jaeger agreed to proceed with our trial strategy.

Aff. at 2.  Despite Jaeger's allegation that counsel "failed to advise [him] of the overwhelming nature of the evidence against him and that [he] had no viable legal defense to the narcotics trafficking charges," Supp. at 5 ¶ 6, counsel does not claim that he correctly advised Jaeger about the elements the prosecution would have to prove to convict him.

ORDER GRANTING § 2255 MOTION / PAGE 15

Defending Jaeger's motion on these grounds is blaming the cart for the direction of the horse. The question is, did counsel correctly explain what constituted the crime of conspiracy, and did counsel competently explain the prosecution's view of how the evidence matched up to the elements of the crime? Counsel's affidavit begs those questions, though Jaeger posed them squarely. The United States does not contradict Jaeger's allegation that incompetent advice about the charges precluded him from making an intelligent choice between pleading guilty and going to trial.

### E. Jaeger's Agreement with Counsel's's Trial Strategy

As for the fact that Jaeger "agreed to proceed with our trial strategy," Aff. at 2 ¶ 9, counsel does not aver that Jaeger understood the trial strategy lacked support in the law. In fact, counsel does not even aver that *he* understood his trial strategy lacked support in the law. As a matter of fact and law, the strategy had no legal support whatever.

General denial may often be the only available trial strategy. It is no longer a defense, however, when counsel's questions prove the prosecution's case. Cross-examining Christie May Staudenmeyer, the minor who was the subject of Count 3, counsel suggested – at self-defeating length – there was some meaningful distinction between distributing methamphetamine and merely "sharing" it:

Q.    [C]an you describe how you two would do dope?  I mean, would

ORDER GRANTING § 2255 MOTION / PAGE 16

you share a pipe or what's going on?

A.    We would smoke it and eat it.

Q.    Together?

A.    Hm-hmm.

Q.    Would there be just one pipe?

A.    No, there was several pipes.

Q.    Okay. Did you have your own and he have his own or would you share?

A.    Sometimes.

Q.    Okay. So sometimes there would be just one pipe and you two would share?

A.    No, there would be several pipes around, but it just depended. I don't really get the question that you're asking me.

Q.    What I'm asking you is did it happen sometimes that when you and John were getting high, was there just one pipe where you two would share?

A.    Yeah.

Q.    Okay. Would that be typically be [sic] John's pipe?

A.    It would be John's pipe sometimes, it would be mine sometimes.

Q.    Did you have your own supply of methamphetamine at his house?

A.    At one point I did. When I stole it from Shane.

Q.     Would that be the only time, then, that you had your own supply
       of methamphetamine?

A.     Yes.

Q.     Okay.  So any other time you would, you say, essentially share
       John's?

A.     Hm-hmm.

Q.     Okay.  For his personal use?

A.     Yes.

Q.     So you never actually got your own stash from John, you would
       just share with him.

A.     Yes.

Trial Tr. at 193:16-195:1.[5]  The law did not require the prosecution to prove that

Jaeger provided Staudenmeyer with "her own stash."  Nor did these questions and

answers tend to negate Staudenmeyer's previous testimony or any of the

prosecution's evidence.  The entire exchange would have been irrelevant, except that

_____

[5] Cross-examining Larry Phillips, counsel clarified the witness's distinction
between a user amount and a dealer amount of methamphetamine and again suggested
that merely supplying methamphetamine was not the same thing as selling or dealing
or distributing it:

A.     No, I said, a quarter ounce to – eight ball to quarter ounce is user,
       and an ounce is dealer.

Q.     Okay.  And could it be just several people that want to get high
       off of it?

A.     Yes.

Trial Tr. at 233:12-16.

ORDER GRANTING § 2255 MOTION / PAGE 18

it established well beyond a reasonable doubt the elements of Count 3.

At the same time, counsel did not show the jury the plea agreements of Staudenmeyer, Hoffman, Phillips, Caldwell, Gibson, and Halse, even though counsel knew each of those agreements contemplated the possibility of a reduced sentence in exchange for testimony.  E.g., Staudenmeyer Plea Agr't (doc. 51) at 7-10 ¶ 13; Answer Ex. A at 9; Answer Ex. B at 1.[6]

Counsel's execution of the trial strategy elicited testimony that proved the prosecution's case and failed to elicit testimony that could have contributed to reasonable doubt.  That is strong evidence that the strategy itself did not attend to what the prosecution did and did not have to prove.

Counsel also repeatedly asked co-conspirators whether they had an agreement with Jaeger.  A formal agreement is not necessary.  Staudenmeyer, using her common sense, highlighted this fact:

> Q.    Okay.   So you didn't agree to assist him distributing methamphetamine?
>
> A.    No, I didn't agree to assist him to distribute methamphetamine. It just kind of happened.  We didn't sit around and make up plans for it, we just done it.

---

[6] This is not to say that Jaeger had a chance of acquittal on the drug counts, but if the defense objective is to show reasonable doubt, it would make sense to introduce the written plea agreement.

ORDER GRANTING § 2255 MOTION / PAGE 19

Trial Tr. at 195:7-11.

Counsel also asked law enforcement witnesses whether some co-conspirators

were named in the same indictment with Jaeger.  He suggested it was relevant that

Shane Hoskins, for example, was not named in the indictment:

> Q.    So the beginning of your investigation, Agent Stavlo, was
> directed at which individual?
>
> A.    Victorino Sandoval-Sepulveda.
>
> Q.    How about Shane Hoskins?
>
> A.    No.
>
> Q.    That wasn't the beginning of your investigation or your – your
> investigation into the whole matter?
>
> A.    I've never investigated Mr. Hoskins.
>
> Q.    Okay.  After your investigation and information you've learned
> from all of this, do you think he's implicated in it?
>
> A.    Yes, I do.
>
> Q.    Okay.  And he was caught, wasn't he, with Tina Gibson who
> testified today?
>
> A.    Yes, he was.
>
> Q.    All right.  Neither of them are named in this?
>
> A.    I'm sorry, sir, I have to correct.  I wasn't part of that investigation.
> I don't know if he was caught with her or not.

ORDER GRANTING § 2255 MOTION / PAGE 20

Trial Tr. at 267:2-19.  There is no legal basis for suggesting that Jaeger's culpability depended on who was or was not named in the indictment.  And the United States capitalized on counsel's cross-examination by letting the jury know what another jury made of Hoskins:

> Q.    Why didn't you investigate Mr. Hoskins?
>
> A.    That was an investigation that was conducted by the drug enforcement agency and the HIDTA task force here in Missoula. That actually predated my investigation and was part of the impetus to investigate further into criminal activity.
>
> Q.    What was the result of that prior investigation against Mr. Hoskins?
>
> A.    Mr. Hoskins was found guilty of distributing and possessing methamphetamine.
>
> Q.    Do you know what kind of sentence he got?
>
> A.    30 years.

Id. at 274:6-17.

To the extent it might appear that counsel was pursuing a nullification defense – trying to make the jury think it relevant that not all co-conspirators were named in Jaeger's indictment – his Rule 29 motion belies the possibility.  A motion tried to the Court cannot rationally be based on a nullification theory.  Counsel simply failed to recognize how an agreement among co-conspirators may be proved:

Obviously the burden is, even in a light most favorable to the United States , a reasonable juror must find the essential elements of the crime beyond a reasonable doubt.  And, Your Honor, the elements that are in this place are that the defendant had to form a conspiracy *with the people named in the indictment.*

And so the people named in the indictment, Your Honor, are Neesha Hoffman, Anthony St. John, Julie Jaeger and Christie May Staudenmeyer.  And we heard from three of those people today, and each one of them *I asked specifically, do you have an agreement with John Jaeger to do anything?  And every single one of co-defendants said, No, I have no agreement with John Jaeger.*

So, Your Honor, if there is a nexus for a conspiracy charge, the burden would be that they have an agreement.  That's the essence of a conspiracy charge, is there's an agreement *between some of these co-defendants* to do something.

And the testimony that came forward today was that there was no conspiracy, let alone a conspiracy to distribute 50 grams or more of methamphetamine.

Trial Tr. at 2677:9-278:3[7] (emphases added).

Additionally, when the parties were asked, at the close of the evidence, whether they had any additional or different jury instructions to propose, counsel said:

> Counsel:          Yes, Your Honor, just one.  That would be the second proposed instruction, for the defense, it's the Pinkerton instruction.

---

[7]   Possibly this theory – that the prosecution must prove the scope of the indictment was the scope of the conspiracy – underlaid counsel's objection to the prosecution's proposed withdrawal of Proposed Jury Instr. No. 39, "Testimony of Witnesses Involving Special Circumstances – Immunity, Benefits, Accomplice, Plea," Model 9th Cir. Jury Instr. (Crim.) No. 4.9 (Sept. 2003).  Trial Tr. at 308:15-25.  But the articulation of the argument was so contorted that, even after much effort at understanding the reasoning, all that can be said is, "Boy, I don't know what you just said."  Trial Tr. at 309:1.

ORDER GRANTING § 2255 MOTION / PAGE 22

The Court:       Okay. Explain that to me.

Counsel:         Thank you, Your Honor.
                 Obviously we have both conspiracy as well as
                 actual distribution allegation.   And I think the
                 Pinkerton instruction is appropriate because it talks
                 about − one of the persons, namely John Jaeger,
                 that's named in Count II, would have actually
                 committed the crime of distribution because I think
                 that crime is one of the allegations that forms the
                 basis of the conspiracy as in Count I.

The Court:       Mr. Van de Wetering.

Mr. Van de Wetering:   Well, I wasn't proceeding on a Pinkerton
                 theory, on Count II, but I guess . . . .

The Court:       I don't understand how this helps you.   I mean,
                 you're sure entitled to have your defense, but it
                 almost seems to me like this adds nails to the coffin.
                 But that's why I asked you to explain to me how −
                 how the Pinkerton theory, which is usually a method
                 of expanding the scope and net of the conspiracy,
                 how that's helpful to you here?  I mean . . . .

Counsel:         It's the theory of the defense that Mr. Jaeger, even if
                 he did distribute, it wasn't part of his − of the
                 conspiracy, because his belief was there was no
                 conspiracy, and so his theory, the reason why he
                 wanted me to introduce this instruction is there is
                 nobody in the conspiracy that has anything to do
                 with any of his dealings.
                 I understand the Court's point of view.   I
                 would like to withdraw it, but my client asked me to
                 propose that instruction.  Over my objections.

The Court:       Well, I'm going to refuse it over your offer.  I think

ORDER GRANTING § 2255 MOTION / PAGE 23

> it's inimical. But he's entitled to his theory of the defense, but, goodness, the law has to support – I mean, it seems to me that what you just said is argument about the instructions that we've just given.  Is there no conspiracy.  And Josh hasn't proven there is one.

Counsel:          Again, thank you for refusing it.

Trial Tr. at 316:9-317:21 (ellipses in original showing pauses, not omissions).

Even if it were not professionally unreasonable for defense counsel to acquiesce to his client's badly misguided theories of the law, Jaeger was at least entitled to develop his legal theories based on correct advice about the consequences he faced if convicted.  But he did not get that advice.  Mot. § 2255 Ex. A at 1.

The record shows that Jaeger received advice "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" whether to go to trial with the "agreed" strategy.  Turner, 281 F.3d at 880.

**F. Conclusion: Ineffective Assistance of Counsel**

The most basic requirement of effective assistance under the Sixth Amendment is correct, timely advice about the elements the prosecution must prove to obtain a conviction, how the prosecution will try to match the facts to the elements, and what consequences are likely to follow at trial and at sentencing.  Advice of that nature is the whole point of having legally trained and professionally licensed counsel.

Jaeger's Supplement to his § 2255 motion alleges that he did not receive the benefit of defense counsel's most basic role. The record robustly supports his claim. Whatever decisions Jaeger may have made in the days between his indictment and trial of his case, they certainly were not informed by the counsel that is guaranteed by the Sixth Amendment. Had they been, there is a distinct probability that he would have pleaded guilty. It is impossible to have confidence in the outcome of this proceeding. Jaeger is entitled to relief.

## IV. Remedy

"[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). A district court has broad legal and equitable authority to implement a remedy under 28 U.S.C. § 2255. Hilton v. Braunskill, 481 U.S. 770, 775 (1987); Hill v. United States, 368 U.S. 424, 427 (1962); 28 U.S.C. § 2243 ("The court shall . . . dispose of the matter as law and justice require."). The remedy should be "tailored to the injury suffered and should not unnecessarily infringe on competing interests." United States v. Morrison, 449 U.S. 361, 364 (1981).

Here, Jaeger suffered the injury of not being able to make an intelligent choice between pleading guilty and going to trial. Included in this injury was his inability to consider the merits and demerits of the United States' original plea offer, Answer Ex. A at 6. To put him back in the position he would have occupied had he received

ORDER GRANTING § 2255 MOTION / PAGE 25

effective counsel, the offer must be reinstated, <u>Blaylock</u>, 20 F.3d at 1468, unless it can prove it would have withdrawn its offer due to changed circumstances, <u>id.</u> at 1468-69. However, Count 4 may not be reinstated for the dual reason that Jaeger was acquitted on Count 4 at trial, Verdict (doc. 117) at 3, and Count 4 would have been dismissed under the original offer, Answer Ex. A at 6. Both of these facts suggest the evidence was not sufficient to support a verdict on Count 4.

As Jaeger points out, Reply at 2 n.1, once he is correctly advised, he may still choose not to plead guilty. In that case, the current judgment will not be altered.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Jaeger's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (doc. 175) is GRANTED.

2. The Clerk of Court shall CLOSE the civil file, <u>Jaeger v. United States</u>, Cause No. CV 09-66-BU-DWM, but shall not enter civil judgment at this time.

3. On or before **July 29, 2010,** the United States must extend to Jaeger the same plea offer(s) it made before trial. It may extend any other offer(s) it deems appropriate. Failure to do so will result in Jaeger's release from custody.

4. On or before **August 9, 2010,** the parties shall jointly file a status report to advise the Court whether Jaeger has accepted a plea offer. If not, these proceedings will be concluded. If so, the Marshals Service will be ordered to transport Jaeger to

Montana and a change of plea hearing and resentencing will be set. The criminal

Judgment (doc. 144) will remain in full force and effect until that time.

DATED this _16_ day of June, 2010.

17:12 pm

_____
Donald W. Molloy
United States District Court